IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY | : | |
| v. | : | Civil Action No. DKC 13-3088 |
| GEORGE W. HUGUELY, V, et al. | : | |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this declaratory judgment action is the motion for summary judgment filed by Plaintiff State Farm and Casualty Company ("Plaintiff"). (ECF No. 60). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion for summary judgment will be granted.

## I. Background

This case centers around the actions of George W. Huguely, V ("Defendant") and his responsibility for the death of Yeardley Love in May 2010.[1] An earlier memorandum opinion, (ECF No. 30), outlines the specifics of the multiple actions arising from that event. Therefore, only a brief summary is necessary. In a criminal case, a jury in the Circuit Court for the City of

---

[1] Unless otherwise noted, the facts outlined here are undisputed or construed in the light most favorable to Defendant, the non-moving party.

Charlottesville, Virginia found Defendant responsible for the death of Yeardley Love and guilty of second degree murder. *Huguely v. Commonwealth*, 63 Va.App. 92, 105 (2014). In a civil case, Sharon D. Love (Ms. Love), as administrator of the estate of Yeardley Love, brought a civil suit against Defendant in the Circuit Court for the City of Charlottesville. Her amended complaint alleges that Defendant was the proximate cause of Yeardley Love's injuries and death. The case in this court concerns whether Plaintiff, an insurance company, is contractually obligated to defend and to indemnify Defendant in the civil case. Interested party Andrew Murphy, III, Defendant's step-father (together with Defendant and interested party Marta Murphy, "Respondents"), purchased a homeowners' insurance policy ("the Policy") from Plaintiff for Respondents' home in Maryland. (ECF No. 60-3). The Policy includes broad indemnification provisions stating that "[i]f a claim is made or a suit is brought against an insured for damages because of bodily injury. . . to which this coverage applies, caused by an occurrence, we will: 1. pay up to our limit of liability for the damages for which the insured is legally liable; and 2. provide a defense at our expense[.]" (*Id.*, at 20). The Policy defines "occurrence" as "an accident, including exposure to conditions, which results in. . . bodily injury[.]" (*Id.*, at 7). The Policy excludes coverage for injury that is "either expected or intended by the insured; or. . . the result of

willful and malicious acts of the insured[,]" (the "Exclusions").
(*Id.*, at 21).

After Ms. Love filed her complaint in the civil case,
Defendant sought coverage from both Plaintiff, (ECF No. 1, ¶ 22),
and Chartis Property Casualty Company ("Chartis"), which insured
Mr. and Mrs. Murphy under two other policies (*see* Case No. DKC-
13-1479, ECF No. 1). Chartis initially provided a defense for
Defendant under a reservation of rights. (*Id.* ¶ 50). On May 20,
2013, Chartis filed a declaratory judgment action in this court
(the "Chartis Case") and on March 20, 2017, this court granted
Chartis's motion for summary judgment and declared that Chartis
had no duty to defend or to indemnify Defendant in the civil case.

On November 1, 2013, Plaintiff initiated this suit, naming
Respondents and Ms. Love as interested parties and seeking a
declaratory judgment that it was not required to defend or to
indemnify Defendant in the civil case under the Policy. On
December 9, 2016, after a stay pending Defendant's direct appeal
in the criminal case and the lifting of the stay upon Defendant's
exhaustion of all direct appeals in his criminal proceedings,
Plaintiff filed a motion for summary judgment and argued that both
the Exclusions and Defendant's failure to cooperate with
Plaintiff's investigation provided bases to deny coverage. (ECF
No. 23). After full briefing and a hearing, the court denied
Plaintiff's motion for summary judgment and concluded that genuine

disputes about material facts existed regarding whether the intentional acts exclusion applied and whether Defendant's failure to cooperate with Plaintiff's investigation prejudiced Plaintiff. (ECF No. 30).

On March 4, 2019, after Ms. Love unsuccessfully appealed this court's decision in the Chartis Case and unsuccessfully petitioned for en banc review, Plaintiff filed an amended complaint. (ECF No. 49). Plaintiff explains that Ms. Love "non-suited" the civil case in May 2018 and "re-initiated" the action in December 2018. (*Id.*, at 3 ¶ 12). Plaintiff additionally explains that "[a] non-suit is a procedure permitted in Virginia state court which allows a [p]laintiff to dismiss the action and re-file the same action within [six] months." (*Id.*, at 4 n.1). Plaintiff emphasizes that Ms. Love's re-filed complaint "removed any reference to negligence and/or gross negligence and [her] claims are now limited to claims of intentional and willful conduct and her only cause of action is for assault and battery." (*Id.*, at 6 ¶ 25). The amended complaint names Respondents as interested parties but does not name Ms. Love as an interested party. (*Id.*, at 1). Plaintiff explains: "As of December 2018, the Love family has taken the position that [because] it has limited its civil claims against [Defendant] to [a]ssault and [b]attery, it no longer challenges [Plaintiff's] position on insurance coverage. . . [and] has withdrawn its

participation in this declaratory proceeding." (ECF No. 60-1, at 3 ¶ 4).

On April 1, 2019, Respondents filed an answer and counterclaim to Plaintiff's amended complaint. (ECF No. 52). On April 22, 2019, Plaintiff answered. (ECF No. 55). On May 31, 2019, Plaintiff filed a motion for summary judgment. (ECF No. 60). On July 19, 2019, Respondents responded and stated: "Due to a number of factors, Respondents have decided to take no position on the [m]otion. Respondents respectfully defer to the [c]ourt to rule on the [m]otion as it sees fit." (ECF No. 64, at 1). On July 29, 2019, Plaintiff replied. (ECF No. 65).

## II. Standard of Review

Summary judgment will be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To prevail on a motion for summary judgment, the moving party generally bears the burden of showing that there is no genuine dispute as to any material fact. *Liberty Lobby*, 477 U.S. at 248–50. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 249. In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable

to the party opposing the motion," *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *see also EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005), but a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences," *Shina v. Shalala*, 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted).

## III. Applicable Law

In diversity actions, a district court applies the substantive law and choice of law rules of the state in which the court sits. *Padco Advisors, Inc. v. Omdahl*, 179 F.Supp.2d 600, 605 (D.Md. 2002) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). In contract claims, Maryland applies the doctrine of *lex loci contractus*, meaning the law of the place where the contract was made applies. *Allstate Ins. Co. v. Hart*, 327 Md. 526, 529 (1992). "The *locus contractus* is the place where the last act is performed which makes an agreement a binding contract." *Grain Dealers Mut. Ins. Co. v. Van Buskirk*, 241 Md. 58, 65-66 (1965). In an insurance contract, the delivery of the policy and the payment of the premiums constitute these "last acts." *Id.* (citing *Sun Ins. Office, Ltd. v. Mallick*, 160 Md. 71, 81 (1931)). Although it appears that the Policy was addressed to Mr. Murphy in California, (ECF No. 60-3, at 1), Plaintiff contends that it was delivered to the Murphys at their Maryland address and that

Maryland substantive law applies to the dispute (ECF No. 60-1, at 7-8). Plaintiff argues in the alternative that California law would apply Maryland law because the property insured was in Maryland. (*Id.*, at 8). Ms. Love and Respondents did not brief the pending motion. Previously, they did not dispute that Maryland substantive law was applicable. (ECF No. 30, at 8). Maryland law does not, however, govern procedural rules in this court, even when jurisdiction is based on diversity.

## IV. Declaratory Judgment While State Action is Pending

"Federal standards guide the inquiry as to the propriety of declaratory relief in federal courts, even when the case is under the court's diversity jurisdiction." *White v. Nat'l Union Fire Ins. Co.*, 913 F.2d 165, 167 (4th Cir. 1990). Under federal law, district courts have "some measure of discretion [as to whether] to entertain a declaratory judgment action that is otherwise properly within its jurisdiction." *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 375 (4th Cir. 1994). The United States Court of Appeals for the Fourth Circuit has held that district courts should not entertain a declaratory judgment action during the pendency of a related state proceeding "when the result would be to 'try a controversy by piecemeal, or to try particular issues without settling the entire controversy.'"[2] *Mitcheson v. Harris*,

---

[2] The Fourth Circuit recently questioned the existence of federal jurisdiction to hear duty to indemnify cases prior to the

955 F.2d 235, 239 (4ᵗʰ Cir. 1992) (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4ᵗʰ Cir. 1937)).  A court must consider four factors in deciding whether to make a declaratory judgment in such a case:

> (i) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts; (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; (iii) whether permitting the federal action to go forward would result in unnecessary "entanglement" between the federal and state court systems, because of the presence of "overlapping issues of fact or law[;]"[] and (iv) whether the declaratory judgment action is being used merely as a device for "procedural fencing."

*Myles Lumber Co. v. CNA Fin. Corp.*, 233 F.3d 821, 824 (4ᵗʰ Cir. 2000) (quoting *Nautilus*, 15 F.3d at 377).  The court previously

---

determination of liability and suggested that such cases present justiciability concerns because the alleged injury – that the insurer might have to guarantee a future judgment – "is of a hypothetical and contingent nature: the injury may or may not occur depending on the outcome of the state lawsuit." *Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 200 (4ᵗʰ Cir. 2019).  The court "distinguished duty-to-defend cases that addressed who was required to pay the costs of defending a suit prior to judgment." *Id.*  The court concluded that "suits about the duty to indemnify – unlike the duty-to-defend suits – would ordinarily be advisory when the insured's liability remains undetermined." *Id.*  After highlighting the justiciability concerns, the Fourth Circuit stated that it "need not resolve this constitutional question today[]" and resolved the case on another ground. *Id.* at 201.  This case involves both the duty to defend and the duty to indemnify (and the duty to defend addresses who is required to pay the costs of defending the suit).  The *Trustgard* concerns are thus inapplicable here.

weighed all four factors and determined that proceeding with this declaratory judgment action was appropriate.  (ECF No. 30, at 8–12).

## V.  Analysis

In Maryland, insurance policies are to be construed pursuant to "ordinary principles of contract interpretation."  *Megonnell v. United Servs. Auto. Ass'n*, 368 Md. 633, 655 (2002).  Thus, the words used in an insurance policy should be given "their usual, ordinary, and accepted meaning" – i.e., the "meaning a reasonably prudent layperson would attach to the term."  *Bausch & Lomb Inc. v. Utica Mut. Ins. Co.*, 330 Md. 758, 779 (1993).  Where the provisions of an insurance policy are unambiguous, the meaning of the terms is determined by the court as a matter of law.  *Cole v. State Farm Mut. Ins. Co.*, 359 Md. 298, 305 (2000).

Under Maryland law, the insurer's duty to defend is a "contractual duty arising out of the terms of a liability insurance policy" and is "broader than the duty to indemnify."  *Litz v. State Farm Fire and Cas. Co.*, 346 Md. 217, 225 (1997).  Whereas the insurer's duty to indemnify only attaches upon liability, "[a]n insurance company has a duty to defend its insured for all claims that are potentially covered under the policy."  *Cowan Sys. v. Harleysville Mut. Ins. Co.*, 457 F.3d 368, 372 (4th Cir. 2006) (citing *Walk v. Hartford Cas. Ins. Co.*, 382 Md. 1 (2004).  Even where an insurer's duty to defend against a suit is based on its

potential liability in that suit, the duty to defend is distinct from the duty to indemnify. *Walk*, 382 Md. at 15.

> In determining whether a liability insurer has a duty to provide its insured with a defense in a tort suit, two types of questions ordinarily must be answered: (1) what is the coverage and what are the defenses under the terms and requirements of the insurance policy? (2) do the allegations in the tort action potentially bring the tort claim within the policy's coverage? The first question focuses upon the language and requirements of the policy, and the second question focuses upon the allegations of the tort suit.

*St. Paul Fire & Marine Ins. Co. v. Pryseski*, 292 Md. 187, 193 (1981). Because the duty to defend is a "broader" duty, *Walk*, 382 Md. at 15, if there is any doubt about "whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in [the] insured's favor." *Aetna Cas. & Sur. Co. v. Cochran*, 337 Md. 98, 107 (1995) (quoting *U.S. Fid. & Guar. Co. v. Nat'l Paving and Contracting Co.*, 228 Md. 40, 54 (1962)).

The Policy's personal liability coverage provision states: "If a claim is made or a suit is brought against an insured for damages because of bodily injury. . . to which this coverage applies, caused by an occurrence, we will: 1. pay up to our limit of liability for the damages for which the insured is legally liable; and 2. provide a defense at our expense[.]" (ECF No. 60-

10

3, at 20).  The Policy defines "occurrence" as "an accident, including exposure to conditions, which results in. . . bodily injury[.]" (*Id.*, at 7).  The Policy does not define "accident." The Policy excludes coverage for bodily injury which is either expected or intended by the insured, or which is the result of willful and malicious acts of the insured.  (*Id.*, at 21).

Ms. Love's amended complaint states one cause of action for assault and battery.[3]  (ECF No. 60-4, at 3–4 ¶¶ 16–22).  The amended complaint narrows the civil case by dropping the negligence counts. (*Compare* ECF No. 60-4 *with* ECF No. 23-5).  The narrowing of the civil case also refocuses this declaratory judgment action.  While the basic facts have not changed, the coverage analysis is clearer and simpler.

Plaintiff contends that there is no duty to defend or duty to indemnify because the Policy provides coverage for bodily injury caused by an accident and the civil case alleges "a non-accidental incident – specifically an assault and battery."  (ECF No. 60, at 4 ¶ 10; *see also* ECF No. 60-1, at 14–18; ECF No. 65, at 4–5). Additionally, Plaintiff contends that the intentional acts

---

[3] The amended complaint identifies "punitive damages" as a second count.  (ECF No. 60-4, at 4–5 ¶¶ 23-24).  Plaintiff explains that Ms. Love's counsel recognizes that punitive damages is not a separate cause of action and lists punitive damages as a separate count "to put Defendant on notice of Plaintiff's intent to seek punitive damages."  (ECF No. 60, at 3 n.1).

exclusion applies.[4]  (ECF No. 60, at 4–5 ¶ 10; ECF No. 60-1, at 18–22).

Plaintiff cites the dictionary definition of accident and two Court of Appeals of Maryland cases, *State Farm Mut. Auto Ins. Co. v. Treas*, 254 Md. 615 (1969) and *Harleysville Mut. Cas. Co. v. Harris & Brooks, Inc.*, 248 Md. 148 (1967), to support its argument that the Policy only covers claims or lawsuits arising out of accidents.  (ECF No. 60-1, at 14–18).  Plaintiff contends that

---

[4] Plaintiff limits its motion to these issues.  (ECF No. 60, at 2 ¶ 3).  Plaintiff does not seek summary judgment on other potential coverage issues, namely that Defendant does not qualify as an insured and that Defendant breached the cooperation clause. (*Id.*).

Plaintiff's amended complaint seeks a declaration that it does not have a duty to defend or indemnify Defendant, but specifically contends that the lack of insurance coverage is due to Defendant's breach of the duty to cooperate and the applicability of the intentional acts exclusion.  As noted above, the motion for summary judgment argues that assault and battery is not an "accident" and does not constitute an "occurrence" so as to trigger coverage under the Policy.  It is at least arguable that Plaintiff is raising an issue not encompassed by the pleadings. Fed.R.Civ.P. 15 governs amendments, and Rule 15(b)(2) provides that an issue tried by implied or express consent is treated as if raised in the pleadings.  There is a circuit split as to whether that Rule applies at the summary judgment stage, although the Fourth Circuit has indicated that, in some circumstances, a district court may recognize and allow a constructive amendment on summary judgment.  *Feldman v. Pro Football, Inc.*, 419 Fed.Appx. 381, at * 7 (4th Cir. 2011) (*citing People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001). Defendant has not objected to consideration of this issue, nor has he defended against the claim.  To avoid any concern, the court construes Plaintiff's motion as including a motion for leave to amend, which is granted.

these cases require courts to apply an objective standard to determine "whether a given occurrence is accidental or intentional" and to conclude that a given occurrence is not accidental when "a reasonable person in the shoes of the insured would foresee the potential results of the insured's actions." (*Id.*). Plaintiff misunderstands these cases for at least two reasons. First, under some circumstances, a subjective standard applies. Second, these cases involved negligence claims, not intentional tort claims.

Since the Court of Appeals of Maryland decided *Harleysville* in 1967 and *Treas* in 1969, it has had occasion to revisit those opinions. Critically, in *Sheets v. Brethren Mut. Ins. Co.*, 342 Md. 634 (1996), the Court of Appeals discussed previous cases, including *Harleysville* and *Treas*, that considered "whether negligent acts by an insured constituted "accidents" under liability insurance policies[]" and clarified that a subjective standard applies to the inquiry. 342 Md. at 650-654. *Sheets* held that "when a negligent act causes damage that is unforeseen or unexpected by the insured, the act is an 'accident' under a general liability policy." *Id*. at 652.

Despite Plaintiff's confusion regarding the case law, Plaintiff is correct that it does not owe a duty to defend or indemnify Defendant. Ms. Love's amended complaint does not allege that Defendant acted negligently; it alleges the intentional tort

of assault and battery.[5] (ECF No. 60-4, at 3-4 ¶¶ 16-22). *Sheets* recognized that the insurer had no duty to defend against a claim of "intentional misrepresentation, as the terms of the policy clearly indicate that there is no duty to defend or indemnify against intentional torts." 342 Md. at 637 n. 1; *see also Kaufmann v. Travelers Cos., Inc.*, No. 09-cv-0171-DKC, 2010 WL 889791 (D.Md. Mar. 5, 2010).[6] There is no "accident" in the assault and battery claim, because it alleges an intentional tort. Therefore, it cannot be covered as an "occurrence."

Two cases, *Lincoln Nat. Life Ins. Co. v. Evans*, 943 F.Supp. 564 (D.Md. 1996) and *Cole v. State Farm Mut. Ins. Co.*, 359 Md. 298 (2000), warrant brief discussion. In each, the court determined that a voluntary act (in *Lincoln*, the setting fire to the bed of the insured victim and in *Cole*, the shooting of the insured victim) may constitute an "accident" for liability insurance purposes. *Lincoln*, 943 F.Supp. at 571 ("The record in this case, and the

---

[5] There is no question that assault and battery is an intentional tort. *See, e.g., Lititz Mut. Ins. Co. v. Bell,* 352 Md. 782, 793-795 (1999) (discussing common law battery); *Johnson v. Valu Food, Inc.*, 132 Md.App. 118, 126 (Md.App. 2000) (discussing battery under Maryland law); *White Pine Ins. Co. v. Taylor,* 233 Md.App. 479, 502 (Md.App. 2017) (discussing common law assault and battery); *Mayr v. Osborne*, 293 Va. 74, 81 (Va. 2017) (noting that battery under Virginia law is "exclusively an intentional tort.")

[6] In addressing the meaning of "accident" in the Sheets policy, the court noted that the policy "also excludes from coverage property damage 'expected or intended from the stand-point of the 'insured.''" *Sheets*, 342 Md. at 646. The same exclusion appears in the policy in this case.

applicable case law causes this [c]ourt to conclude that reasonable minds could differ as to whether the death of [the victim] was 'accidental.'"); *Cole*, 359 Md. at 318 ("We hold, under the facts of this case, that [the victim's] death was the direct result of an 'accident' because her shooting was an unusual and unforeseen event when viewed from her perspective as the insured victim."). *Cole* noted that the Court of Appeals of Maryland "has not been faced with the question of whether an intentional tort may be considered an 'accident' as that term is used in accidental death insurance coverage." *Id.* at 312. *Cole* and *Lincoln* provide a test for analyzing "the events of an intentional tort from the perspective of an insured who is also the victim of the intentional tort." *Id.* at 315. Crucially, both courts "define[d] 'accident' from the point of view of the insured." *Id.* In both *Cole* and *Lincoln*, the insured was the victim. That is not the case here. Here, the insured is the perpetrator of the alleged intentional tort. *Cole* explicitly stated that an intentional tort "hardly can be called an accident" when standing in the shoes of the tortfeasor. 359 Md. at 307. *Cole* and *Lincoln* are thus distinguishable. The assault and battery claim in this case alleges an intentional tort and cannot constitute an "accident" giving rise to a duty to defend or to indemnify.

Given this conclusion, it is not necessary to discuss separately the applicability *vel non* of the exclusion, or the

counterclaim. State Farm is entitled to a declaration that it owes no duty to defend or to indemnify arising from the civil case.

## VI. Conclusion

For the foregoing reasons, the motion for summary judgment filed by Plaintiff will be granted. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
